1

2

3

4

5

6

7

8

9              IN THE UNITED STATES DISTRICT COURT

10            FOR THE EASTERN DISTRICT OF CALIFORNIA

11  LONNIE JAMES SHOULDERS,

12            Petitioner,                    No. CIV S-07-1763 MCE CHS P

13       vs.

14  JAMES WALKER,

15            Respondent.          FINDINGS AND RECOMMENDATIONS

16  _____/

17                        I.  INTRODUCTION

18            Petitioner Lonnie James Shoulders is a state prisoner proceeding through counsel

19  with an amended petition for writ of habeas corpus pursuant to 28 U.S.C. §2254.  Petitioner is

20  currently serving an aggregate sentence of nine years and four months in state prison.  The

21  pending petition challenges his 2004 conviction in the Shasta County Superior Court for petty

22  theft, with a prior theft conviction, for which he was sentenced to a prison term of five years.

23  Petitioner challenges the constitutionality of that conviction and its accompanying sentence

24  enhancements.  After a thorough review of the review and the applicable law, it is recommended

25  that the petition be denied.

26  /////

1

## II.  FACTUAL AND PROCEDURAL BACKGROUND

The following factual summary was set forth in the unpublished opinion of the California of Appeal, Third District.  Petitioner is the defendant referred to therein.

In June 2003, loss prevention specialist Timothy Bryant watched on a closed circuit television system in a "high-theft" area of a Redding department store.  Defendant was "fingering through" compact discs but, at the same time, he was looking around appearing to pay more attention to his surroundings than the discs. Defendant selected a disc with his right hand and turned his back to the camera.  When defendant turned back around, he was fixing his shirt and the disc was no longer visible.  Bryant informed Gary Ninman, the store's loss prevention manager, that he thought he had seen something on the video monitors.

Bryant continued to watch as defendant purchased two compact discs, neither of which was the one that Bryant had first seen in defendant's hand.  The cashier put the two discs in a bag and defendant walked away.  After passing the optical department, defendant put his hand in his pants, pulled something out, placed it in the bag, and left the store.

When Ninman first saw defendant on the monitor, he was "fiddling" with the waistband of his pants more than a person would normally be expected to do.  Ninman saw defendant walk toward the front of the store, reach into the waistband of his pants, take out a compact disc, and put it in the bag with the items he had purchased.

Bryant and Ninman contacted defendant outside the store and asked to see his receipt.  Three compact discs were in the bag, but only two were listed on the receipt.  Defendant told Bryant that the "employee must not have rang him up for the third C.D."  Bryant, Ninman, and the defendant went back inside the store to the loss prevention office.  Defendant continued to claim that he had put the third disc on the counter, that the clerk failed to ring him up for it, and that the clerk nevertheless placed the disc in the bag.

Redding Police Officer Bradley LaCroix responded to the store. LaCroix took defendant into custody and advised him of his constitutional rights.  Defendant acknowledged to LaCroix that he concealed the disc on his person; however, he was "quite insistent" that he was going to pay for it.  At booking, defendant had in excess of $100 cash on his person.

The defense rested without presenting evidence or testimony.

(*People v. Shoulders*, No. C047665, 2005 WL 2461820 at 1-2.)

2

Petitioner was convicted by jury of petty theft with a prior theft conviction.  In a bifurcated proceeding, the jury also found true a prior prison term allegation under Cal. Penal Code §667.5(b), and that petitioner had incurred a prior strike under Cal. Penal code §1170.12 (California's habitual criminals or "three strikes" law), based on a 1981 juvenile adjudication for robbery.

For the conviction of petty theft with a prior, the court imposed the middle term of two years, which was doubled to four years by virtue of being petitioner's second strike.  An additional year was imposed as an enhancement for petitioner's prior prison term, for a total sentence of five years.  Thereafter, in another unrelated Shasta County criminal case, petitioner was sentenced to an additional four years and four months, to be served consecutively to the sentence imposed for the conviction and enhancements at issue in the pending petition.

The California Court of Appeal affirmed petitioner's conviction and sentence on direct appeal, and the California Supreme court denied review.  Petitioner sought habeas corpus relief in state court with respect to issues not presented in this federal petition; that relief was likewise denied.

Subsequently, petitioner filed an original habeas corpus petition in the Ninth Circuit Court of Appeals.  The Ninth Circuit acknowledged receipt of the petition on February 2, 2007.  On August 28, 2007, it was ordered that the original petition filed in the Ninth Circuit be transferred to this court.

Petitioner's original pro se filing presented all the issues he raised on direct appeal as well as those raised in state court habeas corpus proceedings.  The amended petition, filed on June 24, 2009 by appointed counsel, presents only four issues which were adjudicated on their merits on direct appeal and fairly presented to the California Supreme Court.

Respondent admits that petitioner has properly exhausted the four claims presented in the pending amended petition.  Respondent denies that the petition was timely filed.

/////

III.  TIMELINESS

A state prisoner challenging his custody has one year to file his federal petition from the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review.  28 U.S.C. §2244(d)(1)(A).

Here, the California Supreme Court denied the petition for review on December 21, 2005.  The 90 day period for seeking review in the United States Supreme Court expired on March 21, 2006.  *See* 28 U.S.C. §2101(c).  Petitioner and respondent agree that the statute of limitations for the issues raised on direct appeal and presented in this federal action began running the next day, on March 22, 2006.  *See* Fed. R. Civ. P. 6(a)).  Absent any tolling of the limitations period, the last day for petitioner to file a timely federal petition was March 22, 2007. *See Thorson v. Palmer*, 479 F.3d 643, 645 (9th Cir. 2007) (applying Fed. R. Civ. P. 6(a) to AEDPA statute of limitations).

Petitioner contends that his petition was timely filed within that period of time, on February 2, 2007, the date of the Ninth Circuit's receipt of his original petition, or, in the alternative, on January 30, 2007, pursuant to the "mailbox rule" for prisoners (*see Houston v. Lack*, 487 U.S. 266, 276 (1988)).  In contrast, respondent asserts that the petition received in the Ninth Circuit on February 2, 2007 was improperly filed in that court and that the true filing date was August 28, 2007, the date it was transferred to this court.

A federal court of appeals has no jurisdiction as a court to grant original writs of habeas corpus.  *See Felker v. Turpin*, 518 U.S. 651, 660-61 (1996).  Rather, writs of habeas corpus can be granted by "the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions."  28 U.S.C. §2241(a).  It is also the case that the Supreme Court, any justice thereof, or any circuit judge may decline to entertain an application for a writ of habeas corpus that has been presented, instead transferring the petition to a district court with jurisdiction to entertain it.  28 U.S.C. §2241(a).  The Federal Rules of Appellate Procedure provide:

1    Application for the Original Writ.  An application for a writ of
     habeas corpus must be made to the appropriate district court.  If
2    made to a circuit judge, the application must be transferred to the
     appropriate district court...
3

4  Fed. R. App. P. 22(a).

5           In addition, the federal statute for transfer to cure want of jurisdiction provides:

6           Whenever a civil action is filed in a court as defined in section 610
            of this title or an appeal, including a petition for review of an
7           administrative action, is noticed for or filed with such a court and
            that court finds that there is a want of jurisdiction, the court shall, if
8           it is in the interest of justice, transfer such action or appeal to any
            other such court in which the action or appeal could have been
9           brought at the time it was filed or noticed, and the action or appeal
            shall proceed as if it had been filed in or noticed for the court to
10          which it is transferred on the date upon which it was actually filed
            in... the court from which it is transferred.
11

12  28 U.S.C. §1631.

13          Citing no binding authority, respondent asserts that section 1631 does not apply to

14  federal habeas corpus petitions governed by the AEDPA.  But the Ninth Circuit Court of Appeals

15  has specifically held that "[t]he federal transfer statute is applicable in habeas proceedings."

16  *Cruz-Aguilera v. I.N.S.*, 245 F.3d 1070, 1074 (9th Cir. 2001) (transferring petition construed as

17  an original petition for writ of habeas corpus to a district court with jurisdiction) (citing *Miller v.*

18  *Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990).  The purpose of section 1631 is "to aid litigants

19  who were confused about the proper forum for review."  *Miller v. Hambrick*, 905 F.2d 259, 262

20  (9th Cir. 1990) (internal quotations omitted); *see also Lopez v. Heinauer*, 332 F.3d 507, 511 (8th

21  Cir. 2003) ("The purpose of the transfer statute is to aid parties whom might be confused about

22  which court has subject matter jurisdiction, and to preserve their opportunity to present the merits

23  of the claim, which if dismissed for filing in the wrong court, might subsequently be barred by a

24  statute of limitations."); *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999) ("A compelling

25  reason for transfer is that the plaintiff, whose case if transferred is for statute of limitations

26  purposes deemed by section 1631 to have been filed in the transferor court, will be time-barred if

1   his case is dismissed and thus has to be filed anew in the right court.").

2            Pursuant to 28 U.S.C. §1631, this action should proceed in this court as if it had

3   been filed in this court no later than February 2, 2007, the date it was received in the Ninth

4   Circuit Court of Appeals.  The petition is timely.

5                              IV.  CLAIMS FOR REVIEW

6            In the pending amended petition, petitioner claims that (A) trial counsel provided

7   constitutionally deficient representation under the Sixth Amendment when he allowed the

8   parties' stipulation to the fact that petitioner had a prior theft conviction to be read to the jury

9   during trial; (B) the prosecutor violated petitioner's rights under the Fifth and Fourteenth

10  Amendments when he made a comment during closing argument referencing the fact that

11  petitioner had not testified in his own defense; (C) the cumulative effect of the two errors alleged

12  in (A) and (B) deprived petitioner of a fair trial; and (D) at sentencing, petitioner's previous

13  juvenile adjudication for robbery was improperly counted as a prior strike and used to enhance

14  petitioner's sentence.

15                   V.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

16           An application for writ of habeas corpus by a person in custody under judgment of

17  a state court can be granted only for violations of the Constitution or laws of the United States.

18  28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v.*

19  *Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (*citing Engle v. Isaac*, 456 U.S. 107, 119 (1982)).

20  This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to,

21  the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Lindh v. Murphy*, 521

22  U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999).  Under

23  AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in

24  state court proceedings unless the state court's adjudication of the claim:

25           (1) resulted in a decision that was contrary to, or involved an
             unreasonable application of, clearly established Federal law, as
26           determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v.*

*Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

A reviewing court looks to the last reasoned state court decision to determine whether the law

applied to a particular claim by the state courts was contrary to the law set forth in the cases of

the United States Supreme Court or whether an unreasonable application of such law has

occurred. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), *cert. dismissed*, 538 U.S. 919

(2003).

Under AEDPA, the "contrary to" and "unreasonable application" clauses are

different.  Relief may be available under the "contrary to" clause of §2254(d)(1) if the state court

arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if

the state court decides the case differently than the Supreme Court has on a set of materially

indistinguishable facts. *Williams*, 529 U.S. at 405.  As the Third Circuit has explained, "it is not

sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is

more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court

precedent *requires* the contrary outcome." *Matteo v. Superintendent*, *SCI Albion*, 171 F.3d 877,

888 (3rd Cir. 1999) (en banc) (emphasis in original).  The state court is not required to cite the

specific controlling test or the Supreme Court authority, so long as neither the reasoning nor the

result of the state court decision contradict same. *Early v. Packer*, 537 U.S. 3, 8-9 (2002).

Under the "unreasonable application" clause, relief may be available if the state

court correctly identifies the governing legal principle but unreasonably applies it to the facts of

the particular case.  The focus of this inquiry is whether the state court's application of clearly

established federal law is objectively unreasonable. *Williams*, 529 U.S. at 410.  "[A] federal

habeas court may not issue the writ simply because that court concludes in its independent

judgment that the relevant state-court decision applied clearly established federal law erroneously

1    or incorrectly.  Rather, that application must also be unreasonable." *Id*.

2    VI.  DISCUSSION

3    A.     Ineffective Assistance of Counsel

4        The Sixth Amendment guarantees a criminal defendant the effective assistance of

5    counsel.  A showing of ineffective assistance of counsel has two components.  First, a petitioner

6    must show that, considering all the circumstances, counsel's performance fell below an objective

7    standard of reasonableness.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  After the

8    acts or omissions that are alleged not to have been the result of reasonable professional judgment

9    are identified, a reviewing court must determine whether, in light of all the circumstances, the

10    identified acts or omissions were outside the wide range of professionally competent assistance.

11    *Id*. at 690; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).  In assessing an ineffective assistance of

12    counsel claim, "[t]here is a strong presumption that counsel's performance falls within the 'wide

13    range of professional assistance.'"  *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (*quoting*

14    *Strickland*, 466 U.S. at 689).  In addition, there is a strong presumption that counsel "exercised

15    acceptable professional judgment in all significant decisions made."  *Hughes v. Borg*, 898 F.2d

16    695, 702 (9th Cir. 1990) (*citing Strickland*, 466 U.S. at 689).

17        The second factor required for a showing of ineffective assistance of counsel is

18    actual prejudice caused by the deficient performance.  *Strickland*, 466 U.S. at 693-94.  Prejudice

19    is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the

20    result of the proceeding would have been different."  *Id*. at 694.  A reasonable probability is "a

21    probability sufficient to undermine confidence in the outcome."  *Id*.; *see also Williams*, 529 U.S.

22    at 391-92; *Laboa v. Calderon*, 224 F.3d 972, 981 (9th Cir. 2000).

23        Here, petitioner alleges that counsel performed deficiently when he permitted the

24    fact of petitioner's prior theft conviction and subsequent incarceration to be read aloud to the jury

25    and referenced multiple times during trial, where instead such information should have been used

26    only as a sentencing factor for the court.

In *People v. Bouzas*, 53 Cal.3d 467 (1991), the California Supreme Court held that "the prior conviction and incarceration requirement of [California Penal Code] section 666 is a sentencing factor for the trial court and not an 'element' of the section 666 'offense' that must be determined by a jury." *Id*. at 480. Thus, a criminal defendant has a right to stipulate to the prior conviction and incarceration, thereby precluding the jury from learning of the fact of his prior conviction. *Id*. At petitioner's trial, counsel agreed to such a stipulation, however, the stipulation was then read to the jury as part of the court's jury instructions. Specifically, the jury was instructed just prior to deliberation:

> The parties stipulate that the defendant admits a prior theft conviction as alleged in the Information and that he served a term in a penal institution for such conviction. This is a fact that the jury should consider as having been proven.

(Lodged Doc. No. 3, Reporter's Transcript ("RT") at 98.) In addition, prior to the presentation of evidence, all prospective jurors were informed "it is further alleged that defendant previously was convicted in the State of California of a theft crime and served a term for the crime in a penal institution." (RT at 40.) The fact that petitioner's offense was being charged as "petty theft with a prior" was referenced multiple other times during trial.

On direct review, the California Court of Appeal, Third District, denied petitioner's ineffective assistance of counsel claim based on this error:

> Defendant contends his trial counsel rendered ineffective assistance when he failed to keep defendant's prior petty theft conviction from the jury. We agree that counsel's performance was ineffective in that it failed to avert clear error by the trial court. However, for reasons we explain, we conclude the ineffective assistance was not prejudicial.
>
> Prior to the introduction of evidence, the trial court and counsel discussed defendant's prior conviction:
>
> "[DEFENSE COUNSEL]: My client wishes to admit it for purposes of keeping it away from the jury so his crime is perceived as being a petty theft. And that is the only reason, and the only purpose for which he's admitting the conviction.

9

"[THE PROSECUTOR]: For that–with that in mind, it would be, as far as advising the jury and reading the Complaint to the jury, you could read: 'It is further alleged that the defendant was previously convicted in the State of California of a theft offense and previously served'-

"THE COURT: I guess what I'm confused about, [defense counsel], is you just don't want the jury to know that, but with what we need to do is the People have to prove it.

"[DEFENSE COUNSEL]: No, the People do not have to prove it in what I'm calling the first phase of the trial.

"THE COURT: Do the People have to prove it for some other phase of this trial?

"[DEFENSE COUNSEL]: Not if it's one of the enhancements.

"THE COURT: It is not.

"[DEFENSE COUNSEL]: It's fine with me that way.

"THE COURT: So he's admitting it and the People don't have to prove it, and that is the end of it. We're not going to be coming back to that. The People don't have to prove it for any purpose.

"[DEFENSE COUNSEL]: If I don't have to hear of this again, that is fine with me. I'm sorry to confuse you."

Defendant waived his rights and admitted a May 1994 grand theft conviction. The court found that defendant understood the consequences of his admission and that his admission was intelligent, knowing and voluntary; and the court accepted the admission.

This exchange ensued:

"THE COURT: [N]ow, going to re-drafting of the that [*sic*] language is it acceptable to read that it is further alleged that defendant previously was convicted in the State of California of a theft crime and served a prison term?

"[DEFENSE COUNSEL]: Can we just use the term penal institution? That is in the document.

"THE COURT: And served a term for the crime in a penal institution.

"[DEFENSE COUNSEL]: That's fine, Your Honor."

/////

After discussing each side's expected witnesses, the trial court asked, "Any stipulations pertinent to trial, other than the admission we just took?" Both counsel answered in the negative.

The prospective jurors entered the courtroom, and the trial court read the "charge" as follows: "The criminal case has one count, again, it is petty theft with a prior, a felony charge, alleging that [defendant], on or about the 22nd day of June, 2003, willfully and unlawfully and in violation of Penal Code Section 484(A), did steal, take and carry away the property of [the victim]. And it is further alleged that defendant previously was convicted in the State of California of a theft crime and served a term for the crime in a penal institution."

Following the presentation of evidence and at an instruction conference, the trial court asked both counsel to "take a moment to draft [their] stipulation." The prosecutor made various suggestions to which defense counsel did not object. The court concluded: "What will be read to the jury is: [¶] 'The parties stipulate that defendant admits the prior theft conviction.' I'm going to say 'admits a prior theft conviction as alleged in the information. And that he served a term in a penal institution for such conviction. This is a fact that the jury should consider as having been proven.' " Both counsel agreed to this language. The stipulation was read to the jury.

""" [I]n order to demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was 'deficient' because his 'representation fell below an objective standard of reasonableness ... under prevailing professional norms.' [Citation.] Second, he must also show prejudice flowing from counsel's performance or lack thereof. [Citation.] Prejudice is shown when there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citations.]" [Citation.]'" (*People v. Avena* (1996) 13 Cal.4th 394, 418, fn. omitted.)

In *People v. Bouzas* (1991) 53 Cal.3d 467, 480, our Supreme Court concluded that "the prior conviction and incarceration requirement of [Penal Code] section 666 is a sentencing factor for the trial court and not an 'element' of the [Penal Code] section 666 'offense' that must be determined by a jury." Thus, a defendant has "a right to stipulate to the prior conviction and incarceration and thereby preclude the jury from learning of the fact of his prior conviction." In this case, defense counsel properly sought to "keep" the prior conviction "away from the jury." (*People v. Bouzas, supra,* 53 Cal.3d at p. 480.) However, he then inexplicably acceded to the court's error in sanitizing the prior conviction instead of deleting it before reading the information to the prospective jurors. When the court asked if it was "acceptable to read that it is further alleged

1   that defendant previously was convicted in the State of California
    of a theft crime and served a prison term," defense counsel should
2   have uttered an emphatic "No."

3   Nevertheless, defendant has not shown that his trial counsel's
    deficient performance was prejudicial. There is no reasonable
4   probability that, but for admission of the prior conviction, the
    result of the proceeding would have been different. (*People v.*
5   *Avena, supra,* 13 Cal.4th at p. 418; see *People v. Hall* (1998) 67
    Cal.App.4th 128, 134-136.)

6
    The facts of defendant taking the disc, concealing it on his person,
7   purchasing two other discs, and then putting the concealed disc in
    his bag were undisputed. The only disputed issue was his specific
8   intent. In closing argument, defense counsel argued, "Maybe
    [defendant] forgets about [the disc in his clothing]. We don't know
9   what was going on in his mind." However, uncontradicted
    evidence showed that defendant moved the disc from his clothing
10  to his bag immediately before exiting the store. Thus, even if
    defendant forgot the disc while he was with the cashier, he
11  remembered possessing it just before he left the store and
    completed the theft. Any deficient performance could not have
12  been prejudicial.

13  (*People v. Shoulders*, No. C047665, 2005 WL 2461820 at 4-6.)

14          As an initial matter, it is clear that defense counsel's error was of constitutional

15  magnitude.  Given the unequivocal holding of the California Supreme Court in *Bouzas*, which

16  issued more than a decade before petitioner's trial, there could be no tactical reason for defense

17  counsel to allow the portion of the information regarding the prior conviction allegation to be

18  read to prospective jurors.  Likewise, there was no tactical reason for allowing the jury to be

19  instructed that the parties had stipulated to the truth of that fact.

20          A finding of deficient performance does not end this court's inquiry, as petitioner

21  must have suffered prejudice in order for relief to issue.  The court of appeal concluded that

22  petitioner failed to demonstrate that counsel's error was prejudicial.  Petitioner, as he must,

23  attacks the court of appeal's conclusion in this regard as objectively unreasonable.  Based on the

24  substantial evidence of petitioner's guilt that was presented at trial, the state appellate court's

25  finding of no prejudice in this case is not contrary to, or an unreasonable application of the

26  *Strickland* standard.

1    During trial, loss prevention officer Bryant, who observed petitioner via live

2    closed circuit television, testified as follows:

3    Q:    Did you see the person that you were observing in the
            electronics department do something particularly suspicious
4          in your mind?

5    A:    Yes.  He selected a C.D. off the shelf, was holding it in his
            right hand, turned a little bit away from the camera, his
6          back was to the camera, did this motion, turned back
            around, was fixing his shirt, and the C.D. was no longer
7          around, he wasn't near anything where he could put it
            down.

8
     Q:    What did you do when you saw that?
9
     A:    Then I contacted my partner, which would have been my
10         boss at the time, Gary Ninman.  We both observed him.  He
            paid specific attention to him at that particular time.
11
     Q:    Okay.  Does the equipment that you have in the room
12         where you monitored this, have the ability for you then to
            focus on a full screen of that one particular camera?
13
     A:    Yes.
14
     Q:    Did you do that?
15
     A:    Yes.
16
     Q:    Okay.  Did you watch this person for some time after that?
17
     A:    Yes.
18
     Q:    Okay.  Did you see him eventually make a purchase?
19
     A:    Yes.
20
     Q:    Could you tell what he purchased?
21
     A:    Two C.D.'s.
22
     Q:    And in the process of watching this occur, did you have to
23         manipulate the camera to maintain visual contact with this
            person?
24
     A:    Yes.
25
     Q:    And when he purchased the two C.D.'s that you spoke of,
26         had you ever seen this C.D. that you saw disappear

13

| | | |
|---|---|---|
| 1 | | reappear? |
| 2 | A: | No. |
| 3 | Q: | And what did you do after the two C.D.'s -- well, what did this person do after the two C.D.'s were purchased? |
| 4 | | |
| 5 | A: | The cashier that he purchased them from put them in a bag for him. He grabbed the wallet and went back out the door. He came around the corner from electronics, passed the optical department, which was closed at the time. There were no employees. I had to get him from a different camera view. You can see out really well. He puts his hand like this in his pants, pulls it out, and puts something in the bag and then exits the store. |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | Q: | You saw all of that from the room where you were monitoring it on the camera? |
| 10 | | |
| 11 | A: | Yes. |
| 12 | Q: | What did you do when you saw that particular action? |
| 13 | A: | I aimed the camera to the door so I can see him just turning the courner [sic] and exited the door. |

(RT at 57-58.)

Bryant testified that petitioner had moved the disc from his waistband into the shipping bag after passing all points of sale but before exiting the store. Petitioner had three items in his bag when he was stopped outside the store; only two of those items appeared on his receipt. When Bryant confronted petitioner, petitioner stated that the employee must have forgotten to ring up the third disc. Subsequently, petitioner admitted to police officers that he had concealed the compact disc in his pants, but insisted that had intended to pay for it. (RT at 59-60, 77-78, 84-85.)

The United States Supreme Court has repeatedly recognized that "the introduction of evidence of a defendant's prior crimes risks significant prejudice." *Almarendez-Torres v. United States*, 523 U.S. 224, 235; *see also Spencer v. Texas*, 385 U.S. 554, 560 (1967) (prior crimes evidence "is generally recognized to have potentiality for prejudice"). This is because such evidence can invite the jury to improperly convict a defendant simply on the basis of

criminal propensity.  *See United States v. Bradley*, 5 F.3d 1317, 1320 (9th Cir. 1993) ("guilt or innocence of the accused must be established by evidence relevant to the particular offense being tried, not by showing that the defendant has engaged in other acts of wrongdoing").  The risk of prejudice is elevated where, as here, the prior conviction is similar to or the same as the charges in the pending criminal case.  *See Old Chief v. United States*, 519 U.S. 172, 185 (1997) ("Where a prior conviction was for [a crime] similar to other charges in a pending case, the risk of unfair prejudice would be especially obvious"); *United States v. Jimenez*, 214 F.3d 1095, 1099 (9th Cir. 2000) (noting prejudicial impact of having jury learn defendant has prior conviction involving firearm "where the only issue in dispute [at trial] was whether the defendant had, in fact, possessed a firearm").

Petitioner argues that the facts of his case are "extremely similar" to those of *Bowen v. Giurbino*, 305 F.Supp.2d 1131 (C.D. Cal. 2005), a well reasoned opinion in which relief was granted to a habeas corpus petitioner whose trial counsel had similarly failed to object to the prosecutor's repeated references during closing argument to the defendant's prior theft related conviction.  In *Bowen*, the defendant was likewise convicted of "petty theft with a prior." 305 F.Supp.2d at 1133.  A store loss prevention officer had testified that the defendant took two door hinges from a shelf and put them in the waistband of his pants.  *Id*. at 1133.  He also saw the defendant's wife take a door hinge and two door viewers and put them in the waistband of her pants.  *Id*.  The defendant and his wife left the store without paying and were detained and subsequently arrested.  *Id*.

At trial the defendant's wife testified that she stole the items and the defendant was not aware of the theft.  *Bowen*, 305 F.Supp.2d at 1133.  She also testified that when they were stopped by store personnel she told them that she had taken the items rather than the defendant.  *Id*.  She denied that they had gone to the store to steal, and testified that she tried to tell the police that she stole all the items.  *Id*.

/////

15

The defendant/petitioner in *Bowen* claimed in his federal habeas corpus proceeding that his attorney was ineffective for failing to object to the prosecutor's repeated references to his prior theft-related convictions.  *Id*. at 1140.  In its analysis, the United States District Court for the Central District of California noted the jury had been presented with a "classic credibility contest" between the store personnel and the defendant's wife.  *Id*. at 1142.  In other words, the jury had been presented with the testimony of the store personnel who claimed to have seen the defendant put the items in his waistband, against the testimony of the defendant's wife who claimed that she stole the items, not the defendant.  It was further noted that the *Bowen* petitioner's conviction had been brought to the jury's attention five separate times during a short trial, and that the jury received no limiting instructions regarding their consideration of petitioner's conviction.  *Id*. at 1141.  The *Bowen* court concluded "[s]ince the reasons offered by the California Court of Appeal for determining petitioner did not suffer prejudice are uniformly flawed, the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner.  *Id*. at 1142.

Petitioner's case has many similarities to that of *Bowen*.  Petitioner's trial was short and the fact that he had incurred a prior theft offense was brought to the jury's attention multiple times, including when the charged offense was read to prospective jurors, during the prosecutor's opening statement, when the trial court read the parties' stipulation, when the jury was erroneously instructed that a prior theft conviction was an element of the charged theft offense, and finally, during the prosecutor's closing argument.  The trial court repeatedly referred to the charged offense in question as "petty theft with a prior."  Also as in *Bowen*, the jury received no limiting instruction regarding its consideration of petitioner's prior theft conviction.  Rather, the jury was instructed only to "consider [the stipulation] as having been proven."  (RT at 98.)

Unlike in *Bowen*, here, the state of the evidence presented at petitioner's trial did not constitute a "classic credibility contest."  The parties appear to agree that petitioner's intent

was the main issue in dispute after presentation of all the evidence.  Petitioner's statement to Officer LaCroix that he had intended to pay for the disc had come before the jury as part of the prosecution's case.  In closing argument, defense counsel argued, "Maybe [defendant] forgets about [the disc in his clothing].  We don't know what was going on in his mind."  (RT at 114.)  It was for the jury to weigh the credibility of petitioner's statement to Officer LaCroix against the testimony of store employees Bryant and Ninman as to what they observed, which was also depicted in the videotape played at trial.

Petitioner argues that his taking of the disc, concealing it on his person, and placing it in the bag after checking out is not clearly, completely, and directly depicted in the videotape, and that the testimony of Bryant and Ninman did not provide any additional evidence of guilt since the videotape itself was the best evidence.  In this regard, Bryant testified that when he and Ninman observed petitioner via closed circuit television they saw exactly what was depicted in the videotape played for the jury.  (RT at 71.)  Bryant testified that the videotape shows petitioner moving an item from his waistband into the bag.  (RT at 70.)  To Ninman, petitioner's actions of pulling the disc from his waistband and placing it into the bag before exiting the store were "crystal clear."  (RT at 77.)  This court's review of the videotape, lodged as a part of this record, reveals that such actions of petitioner are something less than completely clear and obvious.  At trial, the prosecutor appeared to agree, arguing to the jury:

> I think you may have to play this tape a couple of times to see what they're talking about.  It is just quick.  Play it as many times as you need to.  I believe you'll see it.  And it makes the decision that much easier.

(RT at 111.)

In any event, what *is* clear from the videotape is that petitioner placed only two discs on the checkout counter for purchase.  It is also clear that the clerk placed only the two purchased discs in the shopping bag.  It is undisputed that there were three discs in petitioner's shopping bag moments later when he was stopped by Bryant just outside the store; one of those

17

1  discs had not been purchased.  A trial defense that petitioner intended to pay for the third disc is

2  simply not plausible, and not supported by any evidence other than the statement that petitioner

3  reportedly made to Officer LaCroix.  Unlike in *Bowen,* where a defense had been presented that

4  the defendant's wife stole the items rather than the defendant, here there is no reasonable

5  probability that, but for the references to petitioner's prior theft conviction, the outcome of the

6  trial would have been different.  *Strickland*, 466 U.S. at 694.

7            The United States Supreme Court has recognized that under *Strickland*, the

8  "benchmark" of the right to counsel is the "fairness of the adversary proceeding."  *Lockhart v.*

9  *Fretwell*, 506 U.S. 364, 368 (1993) (quoting *Nix v. Whiteside*, 475 U.S. 157, 175 (1986)).  In

10  *Fretwell*, the court held that in the situation presented, "an analysis focusing solely on mere

11  outcome determination, without attention to whether the result of the proceeding was

12  fundamentally unfair or unreliable, is defective."  506 U.S. at 368.  Thus an argument could be

13  made that, while petitioner cannot show prejudice using an outcome determinative test, the

14  nature of his counsel's error was so grave as to implicate the fairness of the trial.  Nevertheless,

15  the Supreme Court has clarified that the *Fretwell*  holding does not supplant the *Strickland*

16  analysis.  *See Williams v. Taylor*, 529 U.S. 362, 393 (2000).  "*Strickland's* outcome-

17  determinative standard is the proper prejudice standard in most ineffective assistance of counsel

18  claims, notwithstanding language suggesting otherwise in *Fretwell*."  *Laboa v. Calderon*, 224

19  F.3d 972, 981 (9th Cir. 2000) (finding no prejudice where criminal defendant's confession was

20  erroneously admitted because the result of the proceeding would not have been different even if

21  the confession had been properly suppressed) (citing *Williams v. Taylor*, 529 U.S. 362).

22            *Fretwell's* narrow holding involved a claim of ineffective assistance based on

23  counsel's failure to raise at sentencing an objection supported by then-existing federal law in the

24  Eighth Circuit.  *See Fretwell* at 367.  By the time the section 2254 petition was considered in

25  federal court, the Eighth Circuit had overruled the precedent upon which the petitioner relied.

26  *See Id*. at 368.  As Justice O'Conner explained in her concurring opinion in *Fretwell*, the

1   majority's holding was "narrow" and merely "identifies another factor that ought not inform the

2   prejudice inquiry"- specifically, the possibility that a state court may make an error in the

3   petitioner's favor.  *Id*. at 374 (O'Connor, J., concurring).  Thus, in all but a few cases, the basic

4   *Strickland* prejudice inquiry applies and "[t]he determinative question-whether there is 'a

5   reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

6   would have been different'- remains unchanged."  *Id*. at 373 (O'Connor, J., concurring) (quoting

7   *Strickland*, 466 U.S. at 694) (citation omitted).

8          Applying that standard here, there is no reasonable probability that, but for the

9   references to petitioner's prior theft conviction, the result of the proceeding would have been

10  different.  Although petitioner's counsel made a very serious error, the evidence against

11  petitioner was very strong, and the *Strickland* outcome-determinative standard for prejudice must

12  be applied.  Under the circumstances of this case, the state court's finding of no prejudice was

13  not contrary to, or an unreasonable application of federal law as determined by the Supreme

14  Court, nor based on an unreasonable determination of the facts in light of the evidence.

15          B.    *Griffin* Error

16          The Fifth Amendment prohibits a prosecutor from commenting to the jury

17  regarding the defendant's failure to testify at trial.  *Griffin v. California*, 380 U.S. 609, 615

18  (1965).  A prosecutor's comment in argument runs afoul of the rule "if it is manifestly intended

19  to call attention to defendant's failure to testify, or is of such a character that the jury would

20  naturally and necessarily take it to be a comment on the failure to testify.  *Lincoln v. Sunn*, 807

21  F.2d 805, 809 (9th Cir. 1987).  Relief is available "'where such comment is extensive, where an

22  inference of guilt from silence is stressed to the jury as a basis for the conviction, and where there

23  is evidence that could have supported acquittal.'"  *Id.* (citations omitted); *see also Beardslee v.*

24  *Woodford*, 358 F.3d 560, 587 (9th Cir. 2004); *United States v. Olano*, 62 F.3d 1180, 1196 (9th

25  Cir. 1995); *Jeffries v. Blodgett*, 5 F.3d 1180, 1192 (9th Cir. 1993).  Conversely, relief will not be

26  granted where the prosecutorial comment is a single, isolated incident, does not stress the

1    inference of guilt from silence as a basis for the verdict and is followed by a curative instruction.

2    *Lincoln*, 807 F.2d at 809.

3                    Here, the prosecutor argued during closing argument:

4                    Mr. Bryant observed the defendant after purchasing the two C.D's
                     walk towards [the] exit door, past the optical department, which
5                    conveniently happened to be closed, and sees the defendant remove
                     the C.D from his pants and putit [sic] in this bag. [¶] Mr. Ninman
6                    observed that motion and then gave the go-ahead, when it came
                     time to make the apprehension as Mr. Ninman testified.
7
                     So the proof is in the testimony of the witnesses.  The tape is
8                    surplus.  We wouldn't need the tape because the testimony is
                     uncontroverted, but it becomes helpful in a number of ways...
9

10   (RT at 110.)

11                   Shortly thereafter, defense counsel requested to approach the bench.  After a

12   discussion was held off the record, the trial judge gave the following admonishment to the jury:

13                   THE COURT:  When the prosecutor made a statement to the effect
                     of something being uncontested, of course, by virtue of pleading
14                   not guilty, it is contested as to whether or not he committed the
                     alleged crime.
15
                     But, remember, the defendant has the absolute right to remain
16                   silent and does not have to take the witness stand or stand and
                     testify.  So you should not interpret from the word uncontested that
17                   he had -- that the defendant had any requirement at all to say
                     anything.  He has the absolute right to remain silent.  You may
18                   proceed.

19   (RT at 113.)

20                   Petitioner argues that his testimony was the only evidence that could have

21   controverted the testimony of Ninman and Bryant, and thus, the prosecutor's reference to

22   uncontroverted testimony impermissibly drew attention to the fact that he did not take the stand.

23   Petitioner also asserts that the trial court's subsequent admonition was insufficient to mitigate

24   any prejudice because it "addressed the term 'uncontested' instead of 'uncontroverted.'"

25                   On direct appeal, the state appellate court rejected petitioner's claim of *Griffin*

26   error:

"Pursuant to Griffin, it is error for a prosecutor to state that certain evidence is uncontradicted or unrefuted when that evidence could not be contradicted or refuted by anyone other than the defendant testifying on his or her own behalf. (*People v. Murtishaw* (1981) 29 Cal.3d 733, 757-758 ... (*Murtishaw* ); see also *People v. Bradford* (1997) 15 Cal.4th 1229, 1339 ... (*Bradford*) ['a prosecutor may commit Griffin error if he or she argues to the jury that certain testimony or evidence is uncontradicted, if such contradiction or denial could be provided only by the defendant, who therefore would be required to take the witness stand'].)  The [California] Supreme Court also suggested in Murtishaw that it is error for the prosecution to refer to the absence of evidence that only the defendant's testimony could provide.  [Citation.]  But although ' "Griffin forbids either direct or indirect comment upon the failure of the defendant to take the witness stand,"' the prohibition '"does not extend to comments on the state of the evidence or on the failure of the defense to introduce material evidence or call logical witnesses." ' [Citation.]" (*People v. Hughes* (2002) 27 Cal.4th 287, 371-372; first italics added, second italics original.)

In this case, the prosecutor described the testimony of two witnesses to the same event, Bryant and Ninman, and commented that their "testimony is uncontroverted," necessarily by each other as well as by any other evidence. Because Bryant and Ninman could have contradicted one another, but did not, their evidence could have been "contradicted or refuted by [someone] other than the defendant testifying on his or her own behalf." (*People v. Hughes*, supra, 27 Cal.4th at p. 371.)  Accordingly, the comment that the testimony was uncontroverted was not Griffin error.

In any event, the prosecutor's comment sought to place the videotape in its proper context, as supplementing the witnesses' testimony; the comment did not criticize defendant for failing to testify. The trial court's admonition that defendant had the absolute right to remain silent made clear that the comment was not to be understood as a criticism of defendant's failure to testify. Beyond a reasonable doubt, any Griffin error was not prejudicial. (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711].)

(*People v. Shoulders*, No. C047665, 2005 WL 2461820 at 3-4.)

The state appellate court's conclusion that no error of constitutional magnitude occurred was reasonable.  The prosecutor essentially commented on the fact that the defense presented no evidence to rebut the factual allegations raised by the trial testimony.  "It is permissible for the prosecutor to call attention to [defendant's] failure to present exculpatory evidence so long as he does not comment on the decision not to testify."  *United States v. Kessi*,

868 F.2d 1097, 1106 (9th Cir. 1989); *see also United States v. Hill*, 953 F.2d 452, 460 (9th Cir.1991).  In this case, the prosecutor did not comment directly on petitioner's failure to testify. The prosecutor's single, isolated remark was not phrased in a way that necessarily called the jury's attention to the fact that petitioner did not testify, and it did not "stress the inference of guilt from silence as a basis for the verdict."  (*Id.*)

Moreover, the state appellate court's conclusion that petitioner suffered no prejudice by virtue of the prosecutor's comment was also reasonable.  *See Rice v. Wood*, 77 F.3d 1138, 1143 (9th Cir. 1996) (*Griffin* error is amenable to harmless-error analysis).  Again, reversal is warranted only "'where such comment is extensive, where an inference of guilt from silence is stressed to the jury as a basis for the conviction, and where there is evidence that could have supported acquittal.'" *Lincoln*, 807 F.2d at 809 (quoting *Anderson v. Nelson*, 390 U.S. 523, 524 (1968) (per curiam)).  This was not the case here.  The prosecutor's comment, if inappropriate, was minimal in comparison with the weight of the evidence presented as to petitioner's guilt. The jury was given a curative admonition shortly after the prosecutor's comment and was also instructed at the close of evidence not to draw any inference from petitioner's failure to testify:

> A defendant in a criminal trial has a constitutional right not to be compelled to testify.  You must not draw any inference from the fact that a defendant does not testify.  Further, you must neither discuss this matter nor permit it to enter your deliberations in any way.

> In deciding whether or not to testify, [a] defendant may choose to rely on the state of the evidence and upon the failure, if any, of the People to prove beyond a reasonable doubt every essential element of the charge against him.  No lack of testimony on the defendant's part will make up for a failure of proof by the People so as to support a finding against him in any essential element.

(RT at 104-05.)  Petitioner is not entitled to relief for his claim of *Griffin* error.

C.       Cumulative Error

The combined effect of multiple trial errors may give rise to a due process violation if the trial was rendered fundamentally unfair, even where each error considered

1    individually would not require reversal.  *Parle v. Runnels*, 505 F.3d 922, 927 (9th. Cir. 2007)

2    (*citing Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) and *Chambers v. Mississippi*, 410

3    U.S. 284, 290 (1973)).  The fundamental question in determining whether the combined effect of

4    trial errors violated a defendant's due process rights is whether the errors rendered the criminal

5    defense 'far less persuasive,' *Chambers*, 410 U.S. at 294, thereby having a 'substantial and

6    injurious effect or influence' on the jury's verdict.  *Parle*, 505 F.3d at 927 (*quoting Brecht*, 507

7    U.S. at 637).

8            Here, petitioner suffered an error of constitutional defect when his attorney failed

9    to keep the fact of petitioner's prior theft conviction from coming before the jury.  On the other

10   hand, the challenged comment of the prosecutor did not constitute an error of constitutional

11   magnitude.  Thus, there is no combined effect of errors to be reviewed.  *United States v. Geston*,

12   299 F.3d 1130, 1138 (9th Cir. 2002) ("Because there is only one error in this case, cumulative

13   error analysis is not triggered."); *United States v. Sager*, 227 F.3d 1138, 1149 (9th Cir. 2000)

14   (holding that "[o]ne error is not cumulative error").

15           D.    Juvenile Adjudication as a Strike

16           The Sixth Amendment to the United States Constitution guarantees a criminal

17   defendant the right to a trial by jury, applicable to state criminal proceedings through the

18   Fourteenth Amendment.  *Duncan v. Louisiana*, 391 U.S. 145, 149-150 (1968).  In *Apprendi v.*

19   *New Jersey*, 530 U.S. 466 (2000), the United States Supreme Court clarified a defendant's rights

20   under the Sixth Amendment by extending the right to trial by jury to any fact finding used to

21   make enhanced sentencing determinations above the statutory maximum for an offense.  "Other

22   than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the

23   prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable

24   doubt."  *Apprendi*, 530 U.S. at 490.

25           Here, in the second phase of petitioner's bifurcated trial, the jury found true that

26   petitioner had incurred a 1981 juvenile adjudication for robbery which was counted as a prior

                                        23

strike for sentencing purposes. "[J]uveniles enjoy no state or federal due process or equal protection right to a jury trial in delinquency proceedings" (*Schall v. Martin*, 467 U.S. 253, 263 (1984)), and respondent does not dispute that no jury found petitioner guilty of the juvenile robbery adjudication which was used to enhance his sentence.

In *United States v. Tighe*, the Ninth Circuit Court of Appeals held:

> [T]he "prior conviction" exception to *Apprendi*'s general rule must be limited to prior convictions that were themselves obtained through proceedings that included the right to a jury trial and proof beyond a reasonable doubt. Juvenile adjudications that do not afford the right to a jury trial and a beyond-a-reasonable-doubt burden of proof, therefore, do not fall within *Apprendi*'s "prior conviction" exception.

266 F.3d 1187, 1194 (9th Cir. 2001). Other federal circuit courts of appeal considering the issue have reached a different conclusion. *See*, *e.g.*, *United States v. Smalley*, 294 F.3d 1030, 1032 (8th Cir. 2002). The Ninth Circuit has recognized that the Third, Eighth, and Eleventh Circuits, in addition to California state courts, have held that the *Apprendi* "prior conviction" exception includes non-jury juvenile adjudications, which can be used to enhance a defendant's sentence. *See Boyd v. Newland*, 467 F.3d 1139, 1152 (9th cir. 2006) ("*Tighe*... does not represent clearly established federal law..."). "[I]n the face of authority that is directly contrary to *Tighe*, and in the absence of explicit direction from the Supreme Court, we cannot hold that the California courts' use of Petitioner's juvenile adjudication as a sentencing enhancement was contrary to, or involved an unreasonable application of, Supreme Court precedent." *Boyd*, 467 F.3d at 1152.

*Tighe* does not dictate that habeas relief be afforded where a state court treated a juvenile offense as a strike prior and petitioner acknowledges such. Petitioner contends, instead, that the Ninth Circuit's *Boyd* decision should be reconsidered in light of its subsequent decision in *Butler v. Curry*, 528 F.3d 624 (9th Cir. 2008). In *Butler v. Curry*, the Ninth Circuit held *Cunningham v. California*, 549 U.S. 270 (2007), in which the United States Supreme Court held that California's Determinate Sentencing Law violated a defendant's right to a jury trial because it allowed a trial court to impose an upper term based on facts found by the court rather than by

the jury, did not announce a new rule of law and must be applied retroactively: "Taken together, *Apprendi*, *Blakely*, and *Booker*, firmly established that a sentencing scheme in which the maximum possible sentence is set based on facts found by a judge is not consistent with the Sixth Amendment." *Butler*, 528 F.3d at 635.  Petitioner points out that the *Butler* court explicitly held that the exception for prior convictions does not apply to juvenile proceedings: "Nor does the *Almendarez-Torres* exception apply to past convictions as a juvenile or to prior removal proceedings, because those underlying proceedings lack full Sixth Amendment protections." *Butler*, 528 F.3d at 645.

Nonetheless, this court is bound by the Ninth Circuit's earlier and more explicit holding in *Boyd* that the rule set forth in *Tighe* is not clearly established federal law as determined by the Supreme Court.  No relief should issue for petitioner's claim of sentencing error.

## VII.  CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 10, 2010

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE